IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| YOCHEVED JUNGER and JACQUELINE KATZ, | § § § | |
| vs. | § § § | CIVIL ACTION NO. 4:25-CV-650 |
| | | JURY DEMAND |
| DSQUARED RELATIONSHIPS, PLLC d.b.a.D2 Counseling, DINA HIJAZI, and DANIEL GOWAN, | § § § § | |

## DEFENDANTS' ANSWER AND DEFENSES TO
## PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Dsquared Relationships PLLC d/b/a D2 Counseling ("D2 Counseling"), Dina Hijazi, and Daniel Gowan (collectively "Defendants") hereby file their Answer and Defenses to Plaintiffs' Complaint.

### I.    PRELIMINARY STATEMENT

1.    Defendants deny the allegations contained in paragraph 1 of the Complaint.

2.    The case cited by Plaintiffs speaks for itself. Defendants deny the remaining allegations in paragraph 2 of the Complaint.

3.    Defendants deny that Plaintiffs were terminated due to retaliation or discrimination and assert that Plaintiffs were terminated for cause. Defendants admit Plaintiffs' pleadings pertaining to Defendants' website. Defendants further admit that on November 19, 2024, during a team meeting, a non-Jewish colleague at D2 solicited advice regarding her Jewish client. Defendants deny the remaining allegations in paragraph 3 of the Complaint.  Pleading further, Defendants assert as follows:

The allegations described in Plaintiffs' Complaint are wholly false and defamatory and have caused Dr. Hijazi and Rev. Gowan to be repeatedly harassed and threatened by countless members

of the Jewish Community.  Unfortunately, certain members of the public have chosen to blindly believe malicious allegations make in the Complaint. This case should not be a referendum of the atrocities that occurred on October 7, 2023, nor of historic antisemitism that continues to this day. What this case is about is whether two individuals, Dr. Hijazi and Rev. Gowan discriminated against two other individuals,  Yocheved Junger ("Ms. Junger") and Jacqueline Katz ("Ms. Katz"), because they are Jewish.  The evidence will show they did not.

First, we would point out that Dr. Hijazi's ex-husband is Jewish and her three children are of Jewish ancestry.  She has family in Israel and had friends in Gaza, and the October 7, 2023 occurrence and subsequent events are deeply disturbing and personal to her.  As for Rev. Gowan, it is curious how Ms. Katz could label him as antisemitic, where the two have had a close familial relationship for many years.  Ms. Katz was married to Rev. Gowan's brother, who tragically died of cancer 6.5 years ago.  During the end stages of his illness he required round the clock care, and both his brother and Ms. Katz were invited to move into Rev. Gowan's home so they could surround his brother with the love and care he needed, where they lived 5 months.  After Rev. Gowan's brother passed, he welcomed Ms. Katz to remain living with him and his family for as long as she wished. It is unlikely that Rev. Gowan would have so readily opened his home to Ms. Katz, a Jewish woman, and that Dr. Hijazi would have married and had children with a Jewish man, if they had some deep hatred for Jewish people or the Jewish faith as has been portrayed in this suit.  Anyone who knows the pair know that such allegations are simply ludicrous.

 In fact,  it was Ms. Junger and Ms. Katz who created a hostile and unsafe environment for co-workers at Dsquared Counseling ("D2"), including but not limited to Dr. Hijazi and Rev. Gowan. By way of background, the therapists at D2 meet once a week for 1 hour from 12:00 – 1:00 for a business meeting, the purposes of which is to discuss business matters, receive training from

outside sources, and consult one another about client matters.  D2 provides lunch for these meetings.  Because the therapists immediately see clients following the business meetings, it is important that this be a safe space for everyone to engage in productive, professional conversations that will not cause emotional dysregulation or disruption which would ultimately have a detrimental effect on their clients.  Contrary to Ms. Junger's and Ms. Katz's assertions, the business meeting was never a space to discuss controversial issues, to offer personal opinions about controversial matters, or to discuss matters of a graphic nature.   The group certainly discussed ways to help clients who might be experiencing difficulties surrounding  many various matters; however, the conversation was routinely redirected to remain client focused and not based on personal opinions alone.

Three (3) days after the October 7, 2023 attack, October 10, 2023, Dr. Hijazi and Rev. Gowan walked into the business meeting with Ms. Junger already sitting and discussing the attack using highly graphic and explicit descriptive language, talking about women being raped and babies being beheaded.  Dr. Hijazi immediately began to experience a trauma response, and excused herself from the group, shaking and trembling. Rev. Gowan went out to check on her, and with encouragement Dr. Hijazi came back into the room and explained to the group that two of her children, who have very Jewish last names, were in Jordan ready to fly to Tel Aviv to visit family.  She did not know if they were safe, nor did she know if her family and friends who reside in the region were safe.   It was requested that the topic not be discussed at the business meeting. As had been the case with other issues, Dr. Hijazi and Rev. Gowan requested that the topic be avoided in the weekly business meeting.  Notably, the group was informed that they were welcome to discuss these issues in whatever manner they saw fit outside of the weekly business meeting, just not during that one (1) hour a week.

3

At the following business meeting, Dr. Hijazi came in and stated she wished she could have been able to regulate herself better and stay in last week's meeting but she could not. She repeated that her children are half Jewish, she is half Palestinian, and that she has friends and family in the region, making her terrified for her loved ones' safety.  She explained that she simply could not listen to such graphic and disturbing content that directly impacted her and her family  during the business meeting and then be able to go back to work.  It was specifically stated that if this was something any of them needed to talk about they certainly were free to do so, just not in the business weekly meeting.  The policy was clearly and directly established at that meeting, and was in line with ensuring the business meetings remained client focused.

Notwithstanding, Ms. Junger brought the topic up again in a business meeting, reporting antisemitic attacks and actions of Hamas in graphic detail.  The conversation was redirected due to lack of client focus and emphasis on personal opinions - and after the meeting Dr. Hijazi and Rev. Gowan met with Ms. Junger individually to again discuss expectations during the business meeting. Ms. Junger expressed with indignation that people needed to know what the terrorists were doing.  Again the policy was restated that she could have her conversations at any time of any day, just not at the weekly business meeting.   Dr. Hijazi checked in on her Jewish colleagues regularly understanding they too had trauma surrounding the events.   Nevertheless, despite knowing of her personal trauma, neither Ms. Junger nor Ms. Katz inquired about her children's safety, the safety of her family, or of her own wellbeing.

Rev. Gowan and Dr. Hijazi spoke with Ms. Junger on at least two (2) occasions to remind her it was inappropriate to use the one (1) hour weekly business meeting to present her personal views and opinions surrounding the Israeli-Palestinian conflict.  Certainly, employees are welcome to entertain discussions with each other about their personal viewpoints outside of the business

27440259.1

meeting; however, the business meeting was not the time or place for these or any other controversial discussions or containing graphic content that could cause dysregulation among attendees.  Subsequently, Ms. Junger and Ms. Katz began attending the business meetings less and less, spending more time behind closed doors, and when they did attend  the business meetings they were frequently disengaged, having side conversations or actively engaged on their phones. It became clear to Dr. Hijazi and Rev. Gowan that Ms. Junger and Ms. Katz were becoming hostile towards  Dr. Hijazi, presumably due to having some Palestinian ancestry.  Nevertheless, Dr. Hijazi and Rev. Gowan understood these were difficult times for their Jewish colleagues, and thus tried to overlook this behavior and continue to move forward as a team.

 Unfortunately, the work environment continued to deteriorate.  Ms. Katz became more and more negative about nearly every aspect of her job, often complaining about other therapists, clients that Dr. Hijazi or Rev. Gowan had referred to her, the office décor, and even the lunch that D2 provided every other Tuesday.  At one point during this deterioration, Ms. Katz stated "I hate working with Indians, why do you give them to me?" Typically, D2's therapists are grateful to receive a new client because they enjoy their work, and never had Dr. Hijazi or Rev. Gowan heard a therapist make such a derogatory comment about another ethnic group.  When questioned further, Ms. Katz stated with contempt "they are all about money."  On another occasion, during this period of deterioration, Ms. Katz came into Dr. Hijazi's office making negative comments about Ms. Junger's caseload, and asked "is she just lazy?  I do not understand why she does not work more."

 With respect to the November 19, 2024 meeting, Ms. Junger's and Ms. Katz's rendition are irreflective of the events that occurred on that day.  At the very end of the meeting, at about 12:55 p.m., a therapist came into the meeting to pick up her lunch and stated she had a Jewish client that was traumatized and stated "I know very little about that part of the world."  One of the Jewish

therapists stated "you need to read about Palestine."  Ms. Katz suggested that the therapist listen to a particular podcast, to which Ms. Junger responded "no that's not a good one" and suggested she "read about Hitler."  Ms. Katz and Ms. Junger continued making recommendations of what to read, listen to, or watch, disagreeing among themselves.  Not once did they Plaintiffs inquire about the client's needs or demographics (age, gender, history, where they grew up, etc.).  Instead Plaintiffs insisted on sharing what the claim is the Jewish experience illustrating their lack of awareness of their own bias and thereby, lack of cultural competence.  Plaintiffs offered what they wanted to impart from their personal perspective not from the perspective of what the client needed. This illustrates Plaintiffs inability to prevent their own biases from overriding their clinical judgement.  None of the exchange was client focused.  Dr. Hijazi noted that there were obvious differing personal opinions that may not align with the client's unique experience, and she suggested it would be better to first understand more about the client's experience. stated suggested it would be better to understand her client's experience.  Dr. Hijazi then left the meeting for her 1:00 client meeting as she and other therapists typically do. For the next 30 minutes, it was reported to Rev. Gowan and Dr. Hijazi that Ms. Junger presented a list of aggressive acts against Jewish people that have existed throughout history, using inflammatory and divisive language, holding herself out as an expert and informing the other therapists what she thought they needed to know, all under the guise of "cultural competence." However, during this time, Ms. Junger did not provide any history of the region, discuss the complexities involved, or make any acknowledgement of her own biases, all of which needed to be present to be considered true "cultural competence."

 Following the meeting, the therapist who made the inquiry apologized to Dr. Hijazi for bringing up the Palestine-Israel topic, so to claim the topic did not turn to that is simply false.  After the

meeting, Dr. Hijazi sent an email to the team again expressing her own vulnerabilities in an effort to acknowledge the pain this topic brought to many of them and to appeal to their sensibilities as professional therapists.  Rather than being met with understanding and empathy, she was attacked by both Ms. Katz and Ms. Junger, who specifically "declined" her request for emotional safety. These actions communicated to Dr. Hijazi and Rev. Gowan that they could not ask for safety, that they could not have a voice. And yet, Ms. Junger and Ms. Katz assert *they* were the ones being silenced. Not only did the Plaintiffs violate D2 Counseling's policy, they disregarded the standards of their profession.

In response, Dr. Hijazi and Rev. Gowan reminded the group that the team meeting was not a forum to present personal opinions regarding politics and religion and it needed to remain a safe space for all involved.  Notably, the group was advised that all were invited to talk about their beliefs and to inform others about their perspectives on any culture, but the business meeting was not the time.  Once again, Ms. Katz and Ms. Junger refused, doubling down on their hostility towards Dr. Hijazi and Rev. Gowan.  It was the culture of hostility that had been brewing for months and their ultimate refusal to adhere to policies surrounding safety in the workplace that led to Ms. Katz's and Ms. Junger's termination.  Their actions called into question their ability to function as competent professionals, and certainly these were valid and legitimate reasons for their termination.  The evidence will clearly show there was no discriminatory or retaliatory intent whatsoever.

## II.    JURISDICTION AND VENUE

4.    Plaintiffs' pleadings represent legal conclusions to which no response is required. To the extent Plaintiffs' pleadings represent fact issues, Plaintiffs deny the allegations in paragraph 4 of the Complaint.

27440259.1

5.     Defendants admit that this Court has personal jurisdiction over D2 Counseling because it has continuous and systemic contacts with the State of Texas. Defendants admit that this Court has personal jurisdiction over Dina Hijazi and Daniel Gowan because they are Texas residents.  Defendants deny the remaining allegations in paragraph 5 of the Complaint.

6.     Defendants admit the allegations in paragraph 6 of the Complaint.

### III.    PARTIES

7.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint, and, therefore, deny same.

8.     Defendants admit that Plaintiff Junger entered into a contract with D2, which required, among other practices, the provision of counseling, workshops, and group therapy for D2 Counseling's clients. Defendants further admit that Plaintiff Junger was reclassified as a W-2 employee. Defendants deny the remaining allegations contained in paragraph 8 of the Complaint.

9.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint and, therefore, deny same.

10.     Defendants admit that Plaintiff Katz entered into a contract with D2, which required, among other practices, the provision of counseling, workshops, and group therapy for D2 Counseling's clients. Defendants further admit that Plaintiff Katz worked as an independent contractor up to her lawful termination. Defendants deny the remaining allegations contained in paragraph 10 of the Complaint.

11.     Defendants deny that Plaintiffs were unlawfully terminated. Defendants admit the remaining allegations contained in paragraph 11 of the Complaint.

12.     Defendants deny that Plaintiffs were unlawfully terminated. Defendants admit the remaining allegations contained in paragraph 12 of the Complaint.

27440259.1

13.    Defendants admit the allegations contained in paragraph 13 of the Complaint.

## IV.    FACTUAL BACKGROUND

A.    Recognition and Understanding of Antisemitism in the Mental Health Field.

14.    The American Psychological Association website and marketing materials speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 14 inconsistent with those written materials.

15.    The resolutions adopted by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings, including all subparts, do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 15 inconsistent with those resolutions, including all subparts.

16.    The research articles published by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 16 inconsistent with those research articles.

17.    The research articles published by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 17 inconsistent with those research articles.

18.    The research articles published by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 18 inconsistent with those research articles.

27440259.1

B.  <u>Defendants, as Licensed Psychologists, Must Comply with Ethical Standards for Mental Health Professionals Relating to Eliminating Bias in Therapy.</u>

19.     Defendants admit that licensed psychologist are required to act in accordance with the rules and guidelines set forth by the American Psychological Association. The rules and guidelines set forth by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 19 inconsistent with those rules and guidelines, including all subparts.

20.     Defendants admit that licensed psychologist are required to act in accordance with the rules and guidelines set forth by the American Psychological Association. The rules and guidelines set forth by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 20 inconsistent with those rules and guidelines.

21.     Defendants admit that licensed psychologist are required to act in accordance with the rules and guidelines set forth by the American Psychological Association. The rules and guidelines set forth by the American Psychological Association speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 21 inconsistent with those rules and guidelines.

C.     <u>The Rise of Antisemitism after October 7, 2023, and Its Impact on the Mental Health Field and the Jewish Community.</u>

22.     The reporting, facts, and coverage concerning the tragic events surrounding the October 7, 2023 attacks speak for themselves and are the best evidence of their contents.

Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any liability in connection with the pleadings in Paragraph 22.

23.    The articles referred in paragraph 23 speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 23 inconsistent with those research articles.

24.    The articles referred in paragraph 24 speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 24 inconsistent with those articles.

25.    The articles referred in paragraph 25 speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 25 inconsistent with those articles.

26.    The articles referred in paragraph 26 speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 26 inconsistent with those research articles.

27.    The articles referred in paragraph 27 speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 27 inconsistent with those research articles.

27440259.1

28. The articles referred in paragraph 28 speak for themselves and are the best evidence of their contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 28 inconsistent with those research articles.

29. Defendants deny that all Jewish people share the same experiences with respect to discrimination and/or antisemitism. Defendants admit the remaining allegations in paragraph 29 of the Complaint.

D.    Defendants Do Not Routinely Engage In and Encourage Discussions about Other Politically Charged Issues and Issues Affecting Other Races and Religions During the Tuesday One-Hour Meeting.

30. Defendants Admit the allegations in paragraph 30 of the Complaint.

31. Defendants admit that meetings were held on Tuesdays.  Defendants deny the remaining allegations in Paragraph 30 of the Complaint, and further assert that the purpose of the Tuesday business meeting was for discussion of relevant D2 Counseling business matters, presentation of valuable community and national resources, to provide a dedicated space for case consultation and clinical collaboration, and to act as a hub for D2 Counseling's CEU offerings, featuring new topics and providing forms to meet CEU requirements. Attendance is expected but not mandatory, and lunch is provided.  The meeting adheres to professional standards and is not a forum for personal opinions or agenda.

32. Defendants admit that at D2 Counseling's one-hour meetings on Tuesdays, the team routinely discussed business and client needs provided that this particular one-hour meeting (but no other particular designated time), as a policy of D2 Counseling, was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients.  Defendants deny the remaining allegations in

12

paragraph 32 of the Complaint.  Pleading further, Defendants assert that while current events effecting clients may come up from time to time and be appropriate in some circumstances, it was widely understood by all therapists that any discussions of a particular graphic nature, involved strong opinions about controversial topics, or that could otherwise  negatively impact the emotional wellbeing by any participant would not be discussed at the weekly business meeting. As previously stated, therapists typically met with clients following the meetings and it was important that all involved maintain emotional stability such that they could effectively serve their clients after the meeting concluded. Redirection from such topics involved various types of issues. Examples of topics that have been redirected at the weekly meeting include, but are not limited to, animal abuse,  graphic descriptions of medical procedures, graphic descriptions of violent acts, and opinions about controversial issues such as gun control and abortion.

33.    Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meetings but that this particular meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 33 of the Complaint. Pleading further, Defendants assert while colleagues may have discussed issues particular to the Mormon faith (Dr. Hijazi and Rev. Gowan do not recall this), no one offered personal opinions surrounding the Mormon faith, the conversation was maintained at a clinical level, and no one expressed or

exhibited a negative emotional impact associated with the topic. Thus, there was no need for redirection.

34.     Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meetings but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 34 of the Complaint. Pleading further, Defendants assert while colleagues may have discussed issues particular to the Muslim faith, no one offered personal opinions surrounding the Muslim faith, the conversation was maintained at a clinical level, and no one expressed or exhibited a negative emotional impact associated with the topic. Thus, there was no need for redirection.

35.     Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meetings but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with

27440259.1

clients. Defendants deny the remaining allegations in paragraph 35 of the Complaint. Pleading further, Defendants assert while colleagues may have discussed issues particular to the Methodist faith and/or the LGBTQ+ community, no one offered personal opinions surrounding the Methodist faith or the LGBTQ+ community, the conversation was maintained at a clinical level, and no one expressed or exhibited a negative emotional impact associated with the topic. Thus, there was no need for redirection.

36.    Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meetings but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 36 of the Complaint.  Pleading further, Defendants assert that while Dr. Hijazi and Rev. Gowan do not recall sharing any specific negative views and/or the politics of Senator Ted Cruz during a meeting, no one expressed or exhibited any negative emotional impact associated with the topic and the conversation was maintained at a clinical level.  Thus, there was no need for redirection.

37.    Defendants admit that various topics have been discussed at D2 Counseling's one-hour business Tuesday meetings but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members

27440259.1

preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 37 of the Complaint. Pleading further, Defendants assert while colleagues may have discussed the topic of abortion and access to health care, no one offered personal opinions surrounding these topics, the conversation was maintained at a clinical level, and no one expressed or exhibited a negative emotional impact associated with the topic. Thus, there was no need for redirection.

38.     Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meeting but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 38 of the Complaint. Pleading further, Defendants assert that while Dr. Hijazi and Rev. Gowan do not recall sharing any specific negative views and/or politics related to the BDSM lifestyle, no one offered personal opinions surrounding such, the conversation was maintained at a clinical level, and no one expressed or exhibited a negative emotional impact associated with the topic. Thus, there was no need for redirection.

39.     Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meeting but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 39 of the Complaint. Pleading further, Defendants assert that the conversation surrounding the Allen shooting began as client-focused.  When a participant began expressing her personal opinions and viewpoints about the politics of gun control, the conversation was in fact redirected. This is a perfect example of the types of conversations that are redirected when warranted.

40.     Defendants admit that various topics have been discussed at D2 Counseling's one-hour Tuesday business meeting but that this particular one-hour meeting (but no other particular designated time) is intended to remain free of incendiary topics involving political or religious opinions and/or of a particularly graphic or upsetting nature that might sidetrack members preparing for post-meeting sessions with clients. Specifically, as a policy of D2 Counseling, the one-hour Tuesday meeting was intended to remain free of incendiary topics including any upsetting graphic content, uncontained bias and opinion, or inflammatory, divisive or contentious language that might negatively impact therapists right before their 1:00 therapy sessions with clients. Defendants deny the remaining allegations in paragraph 40 of the Complaint. Pleading further, Defendants assert that while Dr. Hijazi does not recall sharing any viewpoints regarding

17

President Trump as a politician or otherwise during a weekly business meeting, no one expressed or exhibited any negative emotional impact associated with the topic and the conversation was kept at a clinical level.  Thus, there was no need for redirection.

E.     <u>Jewish Voices and Identities Were Not Shunned During the November 19, 2024, Tuesday Meeting.</u>

41.     Because of the vague nature of the allegations, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint and, therefore, deny same.

42.     Defendants admit the allegations contained in paragraph 42 of the Complaint.

43.     Defendants admit that on November 19, 2024, during a team meeting, a non-Jewish colleague at D2 solicited advice regarding her Jewish client. The remaining allegations contained in Paragraph 43 of the Complaint are denied as stated.

44.     Defendants deny the allegations contained in paragraph 44 as stated.  Pleading further, Defendants assert that Ms. Junger and Ms. Katz were not providing an understanding of "collective trauma' nor useful insights to Ms. Knott.  Rather, the three Jewish therapists in the room were disagreeing about the types of resources that may worthwhile, and each expressing their own strong opinions surrounding the topic.  For example, one of the Jewish therapists stated "you need to read about Palestine."  Ms. Katz suggested that the therapist listen to a particular podcast, to which Ms. Junger responded "no that's not a good one" and suggested she "read about Hitler." Ms. Katz and Ms. Junger continued making recommendations of what to read, listen to, or watch, disagreeing among themselves. Contrary to the allegations,  Dr. Hijazi did not "abruptly leave the room."  Rather, the meeting time had ended and Dr. Hijazi left to see a client.

45.     Defendants deny the allegations contained in paragraph 45 as stated. Pleading further, Defendants assert that it is offensive to the real and abject racism experienced by Jewish

18

people across the world to interpret a redirection of a conversation taking place on D2 Counseling's campus (made with the intention of keeping a one-hour session free from incendiary topics involving political or religious opinions that might sidetrack members preparing for post-meeting sessions with clients) into a purported indictment against Plaintiffs or against Jewish people at large. Defendants object to the remaining allegations contained in paragraph 45, and further aver that not once did Plaintiffs inquire about the client's needs or demographics (age, gender, history, where they grew up, etc). Instead, Plaintiffs insisted on sharing what they claim is the Jewish experience illustrating their lack of awareness of their own bias and thereby, their lack of cultural competence. Plaintiffs offered what they wanted to impart from their personal perspective not from the perspective of what the client needed. This illustrates their inability to prevent their own biases from overriding clinical judgement. None of the exchange was client focused. Notably, the parties were always specifically informed that they could discuss their opinions and viewpoints as to any topic with colleagues, just not at the one-hour weekly business meeting. To assert that such was "simply because they were Jews" is preposterous, slanderous, and defamatory.

46.    Defendants deny the allegations contained in paragraph 46 of the Complaint. Pleading further, Defendants assert that neither Ms. Junger nor Ms. Katz, nor any other therapist, was "silenced."  In fact, the group was advised that all were invited to talk about their beliefs and to inform others about their perspectives on any culture, but simply that the one hour (1) weekly business meeting was not the time

F.  Plaintiffs Are Terminated for Cause.

47.    Defendants deny the allegations contained in paragraph 47 of the Complaint.  In further response, Defendants assert that her email in no way prevented colleagues from "bringing

19

up the Palestine Israel topic *in the workplace."*   It is curious that responsive emails from Ms. Junger and Ms. Katz were attached to their complaint in total, while Dr. Hijazi's email was not, and the description of Dr. Hijazi's email is patently false. Dr. Hijazi's email read as follows:

> RE:    A Request for Help - dina@d2counseling.com - D2Relationships.com Mail
>
> On Wed, Nov 20, 2024 at 9:43 AM Dina Hijazi <dina(a),d2counseling.com> wrote:
>
> Good morning, first of all thank you Kari for your apology for bringing up the Palestine Israel topic. Earlier this year I requested that this topic not be discussed during the 12-1 Tuesday meeting. I have great pain around this as I know some of you do as well. In order for me to work and be present with my clients I have asked that this be kept out of the noon meeting. Yesterday I had a difficult time regulating myself during my 1pm session. My request for help is this: would you be willing to step in and ask that the conversation shift if this happens again? I was unable to advocate for myself yesterday due to my pain and I'd really appreciate this assistance. You all are so important to me which is why I wanted to share this vulnerability.

The email was very specific in its request – to not discuss the topic "during the 12-1 Tuesday meeting."   To assert that they were prohibited from discussing their views on any topic "in the workplace" is wholly untrue and defamatory.  Additionally, rather than be met with any sort of compassion or empathy, Ms. Junger and Ms. Katz specifically "declined" her request for emotional safety.

48.    Defendants deny the allegations contained in paragraph 48 of the Complaint  as stated.  Pleading further, Defendants assert that the conversation during the November 19, 2024 meeting was in no way an effort to share "cultural competence" as alleged by Ms. Junger.   Not once did Ms. Junger or Ms. Katz inquire as to the specific therapeutic concerns of the client, nor

request important information necessary to "cultural competence" such as age, gender, where the client was from, or to gain a better understanding of the client's perspective. Simply put, none of the exchange was client focused, which was a well understood policy for discussions taking place during the one (1) hour weekly business meeting.

49.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegations in paragraph 49 of fact inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as a purported indictment against their identities.

50.    The allegations contained in Paragraph 50 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

51.    The allegations contained in Paragraph 51 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

52.    The allegations contained in Paragraph 52 are denied.

53.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegations of fact in paragraph 53 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities. In further response, Defendants aver that Ms. Katz's email

was highly unprofessional, accusing the managing partner, Dr. Hijazi, of adopting a "victim role." Despite her role as a partner in the business, Dr. Hijazi is equally entitled to work in an environment free from discrimination and harassment.  Plaintiff Katz's email was unprofessional and unethical according to the Somatic Experiencing International Code of Ethics and Standards, i.e., grounds for termination. While it is Ms. Katz' contention that she felt "shut down and unheard," this dismissive response was in fact an attempt to "shut down" Dr. Hijazi and refuse her request to work in an emotionally safe environment. In fact, Dr. Hijazi left the meeting to prepare for her 1:00 client session, as is typical for therapists at D2 Counseling.

54.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 54 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.

55.    The allegations contained in Paragraph 55 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

56.    The allegations contained in Paragraph 56 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

57.    The allegations contained in Paragraph 57 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

58.    The allegations contained in Paragraph 58 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

59.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 59 inconsistent with those referenced email exchange. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.  Further, Defendants aver that Dr. Hijazi and Rev. Gowan's response very clearly explained that the issue was not about cultural competence or shutting down conversations, and in fact specified that the team was "free to continue inviting anyone and everyone to talk about [your] perspectives on any culture."  Once again, it was explained that the weekly business meeting was not the place for expressing strong opinions about controversial topics, regardless of the position one may have, and that emotional safety of the group would always come before personal agendas.  All colleagues were invited to meet with Dr. Hijazi and/or Rev. Gowan with questions or concerns.  The group was then directed that the discussion was to be removed from the team email in favor of individual conversations if anyone had more to share or discuss.

60.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 60 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus

27440259.1

as an indictment against their identities.   In fact, the screenshot clearly demonstrates D2 Counseling's policy.

61.     The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 61 inconsistent with those referenced email exchange. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.

62.     The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 62 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.  In further responding, Defendants aver that Ms. Katz's email was not only unprofessional, it was insubordinate and served as a refusal to adhere to directives of management, i.e., that continued discussions should be presented one-on-one and not on the team email.

63.     The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 63 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.  Defendants further aver that Ms. Katz's insubordination

and unprofessionalism was in fact over the line, and other colleagues have expressed their position that this and subsequent emails from Ms. Katz and Ms. Junger were inappropriate and should have been handled outside of the team email.

64.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 64 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.

65.    The allegations contained in Paragraph 65 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications.

66.    Defendants deny the allegations contained in paragraph 66 of the Complaint.

67.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 67 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.

68.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 68 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of redirection of a conversation taking place on D2 Counseling's campus as

an indictment against their identities.  Moreover, while asserting that Dr. Hijazi was biased, Plaintiff Junger failed to recognize her own bias and, instead, continued to publicly disrespect and defame Dr. Hijazi in protest of D2 Counseling's policy.

69.    The email exchange referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 69 inconsistent with those referenced emails. Pleading further, Plaintiff's pleadings represent a gross and unfortunate mischaracterization of a redirection of a conversation taking place on D2 Counseling's campus as an indictment against their identities.

70.     Defendants admit that Plaintiffs were terminated for cause on or about November 25, 2024, pursuant to an attempted phone call and subsequent voicemail. Defendants deny the remaining allegations in paragraph 70 of the Complaint.

71.    The voicemail referenced speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 71 inconsistent with the referenced voicemail.

72.    Defendants deny the allegations contained in paragraph 72 of the Complaint.

73.    Defendants provided Plaintiffs, recently terminated from D2 Counseling, an office space from which to continue to service their clients as a courtesy. Defendants deny the remaining allegations as stated in paragraph 73 of the Complaint.

74.    Defendants deny the allegations contained in paragraph 74 of the Complaint.

75.    Defendants deny the allegations contained in paragraph 75 of the Complaint.

G.    No Evidence of Retaliation or Pretext.

26

76.    The allegations contained in Paragraph 76 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

77.    The allegations contained in Paragraph 77 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

78.    The allegations contained in Paragraph 78 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

79.    The allegations contained in Paragraph 76 are denied. Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of the referenced communications and are wholly taken out of context.

H.    Defendants' State Court Action is Lawful, Supported by Substantial Merit, and was Initiated in Good Faith without Retaliatory Motive or Intent.

80.    Defendants admit that Plaintiffs filed the Original Complaint in this matter on June 18, 2025. The remaining allegations contained in Paragraph 80 are denied, as stated.

81.    Defendants admit they filed a State Court Action asserting valid legal claims.  The remaining allegations contained in paragraph 81 are denied.

82.    Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.    Defendants deny the allegations contained in Paragraph 83 of the Complaint.

I.    Defendants' Conduct was Lawful, Appropriate, and At No Time in Disregard of Plaintiffs' Statutory Rights.

84.    The allegations contained in paragraph 84 are denied.  Pleading further, Plaintiffs' pleadings represent a gross and unfortunate mischaracterization of the nature, substance, and intent of referenced communications.

27440259.1

85.     Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     Defendants deny the allegations contained in Paragraph 86 of the Complaint.

**V.      CAUSES OF ACTION**

**<u>COUNT I</u>**
**<u>42 U.S.C § 1981</u>**
**(Interference with Right to Contract Based on Race)**

87.     Defendants replead and incorporate by reference all previous pleadings in the preceding paragraphs as if fully set forth herein.

88.     The law cited speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 88 inconsistent with the cited law.

89.     The statute cited speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 89 inconsistent with the cited statute.

90.     The law cited speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 90 inconsistent with the cited law. Pleading further, Plaintiffs fail to state a claim under the referenced law of paragraph 90.

91.     Defendants deny the allegations contained in paragraph 91 of the Complaint.

92.     Defendants deny the allegations contained in paragraph 92 of the Complaint.

93.     Defendants deny the allegations contained in paragraph 93 of the Complaint.

94.     Defendants deny the allegations contained in paragraph 94 of the Complaint.

**<u>COUNT II</u>**
**<u>42 U.S.C § 1981</u>**
**(Retaliation)**

95.    Defendants replead and incorporate by reference all previous pleadings in the preceding paragraphs as if fully set forth herein.

96.    Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.    Defendants deny the allegations contained in paragraph 97 of the Complaint.

98.    Defendants deny the allegations contained in paragraph 98 of the Complaint.

99.    Defendants deny the allegations contained in paragraph 99 of the Complaint.

100.    Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.    Defendants deny the allegations contained in paragraph 101 of the Complaint.

## COUNT III
### 42 U.S.C § 1981
### (Retaliation)

102.    Defendants replead and incorporate by reference all previous pleadings in the preceding paragraphs as if fully set forth herein.

103.    Defendants deny the allegations contained in paragraph 103 of the Complaint.

104.    Defendants deny the allegations contained in paragraph 104 of the Complaint, including all subparts.

105.    Defendants deny the allegations contained in paragraph 105 of the Complaint.

106.    Defendants deny the allegations contained in paragraph 106 of the Complaint, including all subparts.

107.    Defendants deny the allegations contained in paragraph 107 of the Complaint, including all subparts.

108.    Defendants deny the allegations contained in paragraph 108 of the Complaint.

109.    Defendants deny the allegations contained in paragraph 109 of the Complaint.

110.    Defendants deny the allegations contained in paragraph 110 of the Complaint, including all subparts.

111.    The law cited speaks for itself and is the best evidence of its contents. Accordingly, Plaintiffs' pleadings do not require a response. To the extent a response is required, Defendants deny any allegation of fact in paragraph 111 inconsistent with the cited law. Pleading further, Plaintiffs fail to state a claim under the referenced law of paragraph 111.

112.    Defendants deny the allegations contained in paragraph 112 of the Complaint.

113.    Defendants deny the allegations contained in paragraph 113 of the Complaint.

114.    Defendants deny the allegations contained in paragraph 114 of the Complaint.

## VI.    PRAYER FOR RELIEF

115.    Defendants deny the allegations contained in paragraph 115 of the Complaint, including all subparts.

### DEFENDANTS' DENIAL OF ALL ALLEGATIONS, REQUESTS FOR RELIEF, CAPTIONS, HEADINGS, OR NOTES

Defendants deny all allegations, requests for relief, captions, headings, or notes throughout Plaintiffs' Complaint which are not specifically admitted by Defendants herein.

### AS TO ALL ALLEGATIONS NOT SPECIFICALLY ADMITTED

Any allegations in the Complaint not heretofore answered, qualified, or denied are here and now denied as though set forth specifically and denied.

### AFFIRMATIVE DEFENSES

1.    At all relevant times with respect to Plaintiffs, Defendants  acted in good faith and complied fully with 42 U.S.C. §1981.

2.    Plaintiffs have failed to establish a prima facie case of discrimination or retaliation under 42 U.S.C. § 1981.

3.    Plaintiffs were terminated for valid legitimate reasons with no intent to discriminate or retaliate against Plaintiffs in any manner.

4.      Any and all actions taken by Defendants were motivated by legitimate, nondiscriminatory reasons that were not pretextual.

5.      To the extent applicable, Defendants plead as an affirmative defense the fact that Plaintiff's damages may be limited by the doctrine of after-acquired evidence.

6.      Any alleged damages to Plaintiffs, which Defendants  continue to deny, are the result of the acts or omissions of Plaintiffs or others over whom Defendants have no control and for whom Defendants have no responsibility.

7.      Plaintiffs failed to mitigate their alleged damages.

8.      The damages alleged by Plaintiffs are speculative, lack any viable legal basis, and are not causally connected to Defendants' alleged conduct.

9.      Defendants  did not commit any intentional, willful, or malicious acts.

10.      The claims asserted by Plaintiffs are frivolous and without reasonable basis in law or in fact.  As a result of the filing of this Complaint by Plaintiffs, Defendants have been required to obtain the services of the undersigned attorneys and are entitled to receive from Plaintiff reasonable attorneys' fees, expert fees, and costs it has and will incur in defending this action through Rule 50, 52 (c), or Rule 56 motion pursuant to the Federal Rules of Civil Procedure and/or through trial.

11.      Defendants assert by this reference all statutory limitations and defenses to liability and damages afforded to Defendants under 42 U.S.C. §1981.

12.      Any alleged damages to Plaintiffs, which Defendants  continue to deny, were caused in whole or in part by an intervening or superseding cause.

13.      Plaintiffs are barred from recovery, in whole or in part, to the extent that some or all of their claims are barred under the doctrines of res judicata, collateral estoppel, equitable

estoppel, accord and satisfaction, unclean hands, waiver, laches, and by way of the applicable statute of limitations, and other statutes relevant to the limitation of actions, should discovery and subsequent investigation prove such defenses warranted.

14.    Plaintiffs cannot recover from Defendants  any punitive or exemplary damages on the grounds that any award of punitive or exemplary damages would be impermissible under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, due to the lack of any actual damages suffered by Plaintiffs, and the gross disparity between the allegations of harm and the size of the claim. Further, Plaintiffs cannot recover from Defendants  any punitive or exemplary damages that would violate the constitutional standards enunciated in cases such as *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

15.    Defendants' state court action was initiated for legitimate, non-retaliatory reasons, including to remedy false and defamatory statements and to enforce contractual obligations, and not in response to any alleged protected activity.

16.    Defendants' state court action is independently justified and has a reasonable basis in fact and law.

17.    Defendants acted in good faith in pursuing a meritorious legal claim.

18.    The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

19.    Defendants reserve the right to amend this answer in order to assert any additional affirmative defenses that may be uncovered or made known during the pendency of this case.

27440259.1

WHEREFORE, PREMISES CONSIDERED, having fully answered and otherwise responded to the allegations in the Complaint, Defendants deny liability to Plaintiffs for any sum, and Defendants request that this Court enter an Order that: (a) dismisses the Complaint against Defendants in its entirety with prejudice; (b) grants judgment in favor of Defendants; and (c) grants Defendants such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Melissa S. Losch*
Melissa S. Losch, *pro hac vice*
La. Bar No. 26811
**MᴄGʟɪɴᴄʜᴇʏ Sᴛᴀꜰꜰᴏʀᴅ, PLLC**
601 Poydras Street – Suite 1200
New Orleans, Louisiana  70130
Telephone:  (504) 586-1200
Facsimile:   (504) 596-2800
E-mail: mlosch@mcglinchey.com

**Joseph D. Brown**
State Bar No. 00793413
Email: joe@joebrown.law
100 N. Travis St., Suite 205
Sherman, TX 75090
Phone: (903) 487-4700
Fax: (903) 421-9440

**ATTORNEYS FOR DEFENDANTS
DSQUARED RELATIONSHIPS, PLLC d.b.a.
D2 Counseling, DINA HIJAZI, and DANIEL
GOWAN**

27440259.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2025, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing has been forwarded to Plaintiff, by and through their attorneys of record, by operation of the Court's electronic filing system and/or by email as follows:

Jaclyn S. Clark (pro hac vice forthcoming)
THE LAWFARE PROJECT
633 Third Avenue, 21st Floor
New York, NY 10017
Email:  <u>Jaclyn@thelawfareproject.org</u>

LeElle B. Slifer
<u>LSlifer@winston.com</u>
Jervonne Newsome
<u>JNewsome@winston.com</u>
William R. Morris Ill (pro hac vice forthcoming)
<u>WMorris@winston.com</u>
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201

*Attorneys for Plaintiffs,*
*Yocheved Junger and Jacqueline Katz*

 /s/ Melissa S. Losch
**MELISSA S. LOSCH**

27440259.1